UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR M. VARGAS,<br><br>         Plaintiff,<br><br>vs.<br><br> MATTHEW CATE, Secretary,<br>California Department of Corrections<br>and Rehabilitation; SUSAN HUBBARD,<br>Former Warden, California State<br>Prison–Corcoran; RAUL LOPEZ,<br>Former Warden, California State<br>Prison–Corcoran;  DERRAL G.<br>ADAMS, Former Warden, California<br>State Prison–Corcoran; F. P. FIELD,<br>Correctional Captain; and C.<br>RODRIQUEZ, Correctional Lieutenant,<br><br>          Defendants. | Case No. 1:10-cv-02273-RRB<br><br><br><br>**DISMISSAL ORDER** |

Victor M. Vargas, a state prisoner appearing *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 against various officials of the California Department of Corrections and Rehabilitation ("CDCR"), and persons employed at the California State Prison–Corcoran ("CSP–Corcoran"). Pending before the Court is Plaintiff's Second Amended Complaint.

## I.     PRIOR SCREENING ORDER

In screening Vargas' First Amended Complaint the Court determined that, because the First Amended Complaint was replete with conclusory allegations unsupported by facts,

it failed to state a cause of action. The Court dismissed the Fourth and Fifth Causes of action with prejudice. The Court also noted that the Sixth Cause of Action was not a cause of action, but part of the prayer for relief.

Although noting that it was unlikely that Vargas could plead any conceivable basis upon which he might be entitled to relief, the Court nonetheless granted Vargas leave to file a Second Amended Complaint. Vargas filed his Second Amended Complaint alleging substantially the same six causes of action as were alleged in the First Amended Complaint.

## II.   GRAVAMEN OF SECOND AMENDED COMPLAINT

Reduced to its essence, as in his First Amended Complaint, Vargas' claim in his Second Amended Complaint is that he was  wrongfully confined in either the Administrative Segregation Unit ("ASU") or the Segregated Housing Unit ("SHU") between June 2007 and January 2012.  In his first cause of action, Vargas contends that he was initially confined to ASU/SHU by Rodriquez as retaliation for initiating a grievance against Rodriquez.  In his second cause of action, Vargas contends that in confining him in the ASU/SHU the "defendants" violated his First Amendment Right of Association.  In his third cause of action, Vargas contends that his confinement was based upon erroneous and untrue information in violation of the Due Process Clause.  The fourth cause of action claims that "defendants" "maliciously and sadistically" placed Vargas in ASU/SHU with "no clear evidence to support their unfounded allegations." The fifth cause of action alleges the supervisory defendants failed to properly train and supervise their subordinates. The sixth cause of action, which

claims that Vargas has been harmed by the Defendants' conduct, continues to be misnomered as a cause of action.

## III.  DISCUSSION

The Second Amended Complaint pending before this Court continues to fall short of stating a viable cause of action against any of the Defendants. The actions of which Vargas complains are summarized in two administrative decisions rendered after Vargas initiated this action. First the May 3, 2011, Memorandum from the Warden of CSP-Corcoran referring the matter of Vargas' classification to the Departmental Review Board.

**Reason for Referral:** California State Prison-Corcoran (CSP-COR), Institutional Classification Committee (ICC) is referring Inmate Vargas to the DRB for appropriate housing review.  This case is DRB controlled. Inmate Vargas was retained CSP-COR Security Housing Unit (SHU) Indeterminate due to his influential leadership with the disruptive group known as the Fresno Bulldogs and his escalating propensity towards violence with both Southern and Northern Hispanic inmates.

**Prior Departmental Review Board:**  Inmate Vargas, hereafter referred to as "S", appeared before the DRB on May 27, 2009. The DRB reviewed all documentation and recommendations of prior institutions and Classification Services Unit (CSU). Per DRB, "S's" retention in SHU is due to limited housing options regarding "S's" affiliation with the Fresno Bulldogs.  Prior approved housing options for Fresno Bulldogs were CSP-COR IV 270 and Salinas Valley State Prison (SVSP) IV 180. The DRB determined "S's" disciplinary history, influence with the Fresno Bulldogs, and disruptive behavior directed towards the Northern and Southern Hispanic population was not conducive toward the normal operations at CSP-COR or SVSP. The DRB approved Indeterminate SHU retention at CSP-COR for a 12-month observation and transition period.

[Case factors describing Vargas' criminal and prison disciplinary histories omitted]

**Circumstances:**  CDCR 128G dated August 9, 2001, documented "S" was identified as a victim of Attempted Murder at SVSP on Facility D.  The attack

was committed by two Inmates identified as Fresno Bulldog affiliates. Confidential Memorandum dated August 21, 2001, indicates "S" stated his accused assailants did not attack him and would not identify who did. Due to the inconclusive evidence, staff could not prove the accused assailants were involved in the attack.  Correctional Sergeant (Sgt) J. Stevenson conducted an interview on August 26, 2001, with the Fresno Bulldog population located on Facility "D" at SVSP concerning the stabbing attack of "S". Sgt Stevenson notes, although no inmates made threats or statements against "S", their body language and verbal tones made him believe "S" would have safety concerns if release back to Facility "D" at SVSP.  "S" remained in the Administrative Segregation Unit (ASU) pending transfer to CSP-COR. On July 23, 2002, "S" arrived at CSP-COR IV.  On May 22, 2004, "S" was placed in ASU and charged with Battery on Inmate with a Weapon (the victim was identified as inmate Estrada, E-37668 Fresno Bulldog associate).  Confidential Memorandum dated April 13, 2004, indicates "S" was ordered to carry out the May 22, 2004, Battery upon his arrival at CSP-COR.  Acording to the CDCR 1288 dated May 23, 2005, "S" states he does not have safety concerns and is in good standings with the Fresno Bulldogs. "S" remained in ASU pending DRB referral due to enemy concerns at CSP-COR IV and SVSP IV. ICC action dated December 14, 2005, notes the aforementioned DRB report was never completed. ICC elected to rescind DRB referral.

Due to "S's" positive program in ASU and also at "S's" request to program in General Population (GP), "S" was subsequently released to CSP-COR IV GP on May 2, 2007.  However, "S" was placed back into ASU on June 20, 2007, due to an enemy housed on the same yard.

**Circumstances (cont):**  "S" remained in ASU pending an attempt to resolve enemy concerns at CSP-COR. CDCR 128B dated December 25, 2007, notes "S" was observed openly disrespecting Southern and Northern Hispanic inmates. Due to staff observation, "S" was identified as an influential leader of the Fresno Bulldogs. On this day the writer notes, "S" appeared to be motivating and encouraging inmate violence against both Southern and Northern inmates. ICC action dated May 5, 2008, notes enemy and safety concerns had been resolved at CSP-COR 3A Level IV; however, due to ongoing conflict with Fresno Bulldogs and Southern Hispanic inmates, ICC elected to retain "S" in ASU with a referral to DRB for Indeterminate SHU retention. CDCR 128B dated December 19, 2008, notes, "S" was the primary instigator of a riot between Fresno Bulldogs and Southern Hispanic Inmates that occurred on CSP-COR 3A facility.  Staff recommend "S" not be returned to Facility 3A whereas his presence would create additional animosity and

tension between the Southern and Bulldog inmates. Retention in CSP-COR ASU was recommended pending transfer to an alternate Level IV institution. On May 27, 2009, DRB approved "S's" placement in CSP-COR SHU on Indeterminate SHU- status for a 12-month observation period. "S" was interviewed on January 6, 2011, regarding possible enemy/safety concerns. During the interview, "S" states he does not have safety issues with the Fresno Bulldog population. "S" identified no enemies during the interview. This chrono notes "S" has an active Bulldog cellmate and is attending "Walk Alone" yard. "S" has a confidential enemy located at SVSP.  Per the Distributed Data Processing System (OOPS) this confidential inmate is housed on a Sensitive Needs Yard.

**Institution Staff Recommendation:**  On December 15, 2010, "S" appeared before CSP-COR ICC for a subsequent DRB referral.  After a review of all case factors, ICC elected to refer "S" to DRB for appropriate placement review with a recommendation for transfer to SVSP IV 180 GP.  Although "S" did not give a preference to a Level IV institution of his choice, the only two approved Level IV institutions in CDCR for Fresno Bulldogs are CSP-COR and SVSP.[1]

The Departmental Review Board took the following action on the referral.

**REASON FOR REFERRAL:**  This case was referred to the Departmental Review Board (DRB) pursuant to the California Code of Regulations (CCR), Title 15, §3376. 1 (d)(7). Specifically, the institution referred this case to the Departmental Review Board (DRB) with placement recommendation as instructed by the DRB action dated 5-27-09.

**INSTITUTION STAFF RECOMMENDATION:**  The institution recommended Inmate Vargas be transferred to Salinas Valley State Prison (SVSP) Level IV GP.

**DRB ACTION OF 5-27-09:**  The DRB approved Inmate Vargas for indeterminate Security Housing Unit (SHU) status and retention at California State Prison, Corcoran (COR) SHU for a 12-month period of observation and transition based on his disciplinary history, influence with the Fresno Bulldogs, and disruptive behavior towards the Northern and Southern Hispanic population.
[Case factors omitted.]

---

[1]      Docket 16 at 85–86.

**CIRCUMSTANCES:**

•       On 12-15-10, Inmate Vargas appeared before the COR Institution Classification Committee (ICC) for a 180-day review. ICC acted to retain Inmate Vargas in the COR SHU on double-cell status, only with a Fresno Bulldog, pending DRB addendum review. Inmate Vargas disagreed with ICC's actions to continue his indeterminate SHU term and stated he had no safety concerns. Per the DRB referral memorandum, dated 5-03-11, this ICC action served as the DRB referral even though this was not articulated in the ICC action nor was a placement recommendation provided by ICC or the inmate.

•       Per a CDCR 128-B, Enemy/Safety Concerns Closure Report, dated 1-06-11, Inmate Vargas was interviewed at COR on 1-04-11, by a correctional sergeant regarding possible safety concerns with the Fresno Bulldog disruptive group.  During the interview, Inmate Vargas stated he did not have safety issues with the Fresno Bulldog disruptive group and could be released to any Bulldog general population (GP) prison in the State.  Inmate Vargas further confirmed the conflict he had at SVSP in 2000/2001 had been resolved at the time of the incident, and he identified no enemies during the interview. The author confirmed there was no information contained in Inmate Vargas's Central File to warrant a concern for his safety, and no other information had developed to substantiate any safety concerns.  In addition, housing unit staff confirmed Inmate Vargas interacts **CIRCUMSTANCES (Continued):** with active Bulldogs on a positive level within the unit. The author confirmed Inmate Vargas has a Bulldog cellmate and is attending walk-alone yard.

•       On 5-19-11, the Classification Services Unit (CSU) received the DRB referral memorandum from COR which recommended placement at SVSP Level IV GP. The memorandum stated that although Inmate Vargas did not provide a preference for placement, SVSP and COR are the only two Level IV institutions currently approved for Fresno Bulldogs.

          o       Upon review, CSU deemed this DRB referral incomplete and made several requests for additional information.

•       On 8-03-11, Inmate Vargas appeared before ICC for an annual SHU review and he was retained in SHU pending DRB action to release. He agreed with ICC's actions and advised the committee he had no safety concerns and was compatible with his cellmate.

• On 8-29-11, Inmate Vargas was interviewed at COR regarding his transfer request. wherein he requested placement at COR IV 3A (Only) 270-design GP, due to proximity to family, or SVSP IV 180-design GP as the alternate. Although the DRB action of 5-07-09, indicated Inmate Vargas held a leadership position within the Fresno Bulldogs disruptive group, information obtained from second and third watch staff at COR indicated Inmate Vargas does not appear to have any influence or hold a leadership role with the Fresno Bulldogs at this time. In addition, he has not demonstrated any disruptive behavior towards Southern or Northern Hispanic inmates. Staff noted there are currently a total of four Bulldog inmates housed in the 4A21 SHU Unit. Inmate Vargas has remained disciplinary free and maintained a positive program.

**CLASSIFICATION SERVICES RECOMMENDATION:** CSU reviewed all case factors and the documentation presented by the institution. CSU recognized Inmate Vargas has modified his behavior and remained disciplinary free since the last DRS. Furthermore, staff at COR indicated he has maintained a positive-program and does not appear to hold any leadership role within the Fresno Bulldog disruptive group. CSU acknowledged Inmate Vargas was the victim of an attempted murder by a Fresno Bulldog in 2001 at SVSP; however, Inmate Vargas adamantly denies safety concerns and claims the conflict he had in 2001 was resolved. CSU noted Inmate Vargas has successfully programmed with Fresno Bulldogs since the incident in 2001 and was subsequently placed on indeterminate SHU based on his leadership role within the disruptive group. There has been no documentation presented that indicated he will-have safety concerns if returned to a GP at SVSP. CSU noted SHU is not a long-term placement option, and, absent any documentation which indicates Inmate Vargas has .safety concerns or is unduly influencing the Fresno Bulldogs, CSU believes he should be given the opportunity to program on the GP. Inmate Vargas is eligible for 180-design housing based upon current SHU placement. Although Inmate Vargas requested transfer to COR, this is not a viable option due to his history of assaultive behavior and gang activity at COR, which could impact the safety of a Level IV 270-design GP. Therefore, based upon Inmate Vargas's modified behavior and completion of a period of observation and transition. as previously requested by the ORB, CSU agreed with the institution and recommended the DRB release Inmate Vargas from indeterminate SHU status and approve transfer to SVSP IV 180-design GP.

**DRB ACTION OF I-19-12:** The DRB reviewed all the documentation presented and the recommendations of the institution and CSU. The DRB

acknowledged Inmate Vargas has modified his prior disruptive behavior and has successfully programmed since his last DRB.  The DRB recognized at one time Inmate Vargas may have had safety concerns with the Fresno Bulldogs, however now claims the issue has been resolved and adamantly denied safety concerns. Moreover,

**DRB ACTION OF 1-19-12 (Continued):**  the DRB noted Inmate Vargas has a Fresno Bulldog cell mate and COR staff have confirmed he Interacts with the active Fresno Bulldogs on a positive level within the unit. Therefore, based on the totality of the case factors, the DRB elected to approve Inmate Varga's's housing request for release to the GP and approved transfer to SVSP Level IV 180-design GP.  The DRB relinquished transfer controL  The DRB also ordered the following actions:

The COR Classification and Parole Representative shall:
•     Complete    the    CDCR    840    with    applicable    transfer information/administrative determinants.
•     Facilitate this transfer within 30 days after the receipt of this action.
•     Remove the transfer control sheet from Inmate Vargas's central file and return it to CSU.[2]

The Second Amended Complaint falls short of addressing the deficiencies the Court noted in dismissing the First Amended Complaint.[3] Vargas was housed in the SHU for safety reasons, not as a disciplinary action. This Court starts with the proposition that the courts should give substantial deference to the judgment of prison officials as to how to maintain prison safety and order.[4]  In addition, placement in the SHU did not impose an

---

[2]      Docket 16 at 89–91.

[3]      The Court noted that the actions of the individuals sued in this case were upheld by the Departmental Review Board, which eliminated any possibility of finding a retaliatory animus on the part of the individuals named as defendants, and that others were sued in their supervisory capacity. The Third Amended Complaint utterly fails to address, let alone correct, these deficiencies.

[4]      *See Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979) (quoting *Procunier v. Martinez*, 416 U.S. 396, 404–05 (1974) (overruled on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401 (1989))); *Norwood v. Vance*, 591 F.3d 1062, 1066–67 (9th Cir. 2010).

atypical and significant hardship on Vargas in relation to the ordinary incidents of prison life.[5]  Moreover, even if the Court were to assume that the length of time Vargas was placed in SHU implicated a liberty interest, the allegations in and attachments to the complaint indicate that Vargas received all the process he was due.[6]  Applying these principles to this case leads this Court to the inescapable conclusion that neither the law nor the facts warrant granting relief by a federal court in this matter.

The Second Amended Complaint does not state a cause of action against any Defendant.  Accordingly, the Complaint must be dismissed in its entirety. Ordinarily, a complaint should not be dismissed without leave to amend for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of plaintiff's claims that would support the granting of relief.[7]  In this case, it is obvious from the Second Amended Complaint, together with the Exhibits attached thereto, that Vargas cannot state a viable cause of action against any Defendant, and granting further leave to amend would be futile.

---

[5]     *See Sandin v. Conner,* 515 U.S. 472, 486 (1995) (disciplinary confinement does "not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"); *see also May v. Baldwin,* 109 F.3d 557, 565 (9th Cir.1997) ("[A]dministrative segregation falls within the terms of confinement ordinarily contemplated by a sentence."); *Anderson v. County of Kern,* 45 F.3d 1310, 1315 (9th Cir.1995) ("no liberty interest in remaining in the general population" of prison).

[6]     *See Wilkinson v. Austin,* 545 U.S. 209, 228–29 (2005) (notice and opportunity to be heard, involving informal, nonadversarial procedures were adequate safeguards for placement in maximum custody).

[7]     *See Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003); *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (2003).

Finally, this Court, having fully considered the matter finds that reasonable jurists could not disagree with this Court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. Accordingly, any appeal would be frivolous or taken in bad faith.[8]

## IV.   ORDER

For the reasons set forth above, the Court hereby **ORDERS:**

1,      The Second Amended Complaint is hereby **DISMISSED** in its entirety, with prejudice.

2.      Plaintiff's *in forma pauperis* status is hereby **REVOKED**.

3.      The Clerk of the Court is directed to enter a judgment of dismissal of this action stating that the dismissal counts as a "strike" under 28 U.S.C. § 1915(g).

**IT IS SO ORDERED** this 7th day of August, 2013.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

---

[8]      28 U.S.C. § 1915(a)(3);  *see Hooker v. American Airlines*, 302 F.3d 1091, 1092 (9th Cir. 2002).